SUMMERS, Justice.
Groendyke Transport, Inc., a motor vehicle common carrier, filed a complaint before the Louisiana Public Service Commission under pertinent provisions of the Motor Carrier Act (La.Rev.Stat. 45:161-172) against Robertson Tank Lines, Inc., a common carrier; Robertson Tank Lines of Louisiana, Inc., a contract carrier; and Robertson Truck Lines, Inc., also a contract carri *1263 er. Some of the services which Groendyke is authorized to render under its common carrier certificate are competitive with services performed by the three Robertson companies.
The complaint alleges that Robertson Tank Lines, Inc., was operating as a common carrier of special commodities by motor carrier within the State of Louisiana under a common carrier certificate issued by the Commission. At the same time Robertson Tank Lines of Louisiana, Inc., and Robertson Truck Lines, Inc., are also operating as contract carriers of special commodities by motor carrier in Louisiana under contract carrier permits issued by the Commission.
The complaints are based upon allegations that the three corporations are managed by, and under the common control of, substantially the same directors and officers. All, or substantially all, of the capital stock of these three corporations is owned and controlled by the same parties, whether directly or indirectly, either through subsidiary corporations or through direct or indirect ownership. The facilities used in the conduct of operations under the contract carrier permits and the common carrier certificate are substantially the same and are used interchangeably.
This common ownership and simultaneous operation under a common carrier certificate and contract carrier permits by corporations under common control is alleged to be contrary to the statutory prohibition that “[n]o person shall at the same time hold, or operate under, both a common carrier certificate and a contract carrier permit.” La.Rev.Stat. 45:165.
In addition, the complaint alleges that under these circumstances the two corporations holding contract carrier authority under the two permits together furnish transportation to more than five separate shippers of property. In doing so, it is contended, they are acting as common carriers, without certificates of public convenience and necessity unless they can show by a clear preponderance and to the satisfaction of the Commission that the character of their operations is not that of a common carrier. Thus, the complaint sets forth that a motor carrier cannot act as a common carrier without having obtained from the Commission a certificate of public convenience and necessity, for to do so is a violation of Section 164[1] of the Motor Carrier Act, punishable as provided in Section 171 (La.Rev.Stat. 45:164, 171).
After a hearing on the complaint, the Commission found that the stock of all three carriers was owned wholly by Robertson Distribution Systems, Inc. It found also that the directors and officers of all three Robertson carriers are essentially the same; that a number of employees work for two or more of the three Robertson carriers and vehicles owned by one of the carriers at times are used by the other by lease or other arrangement.
With these findings and in light of the decision in American Courier Corporation v. Louisiana Public Service Commission, 256 La. 464, 236 So.2d 802 (1970), the Commission found that the operations conducted by the three Robertson carriers in Louisiana intrastate commerce were essentially that of one person and in violation of the prohibition contained in Section 165 of the Motor *1264 Carrier Act against any person, at the same time, holding, or operating under, both a common carrier certificate and a contract carrier permit.
The Commission also found that the operations of the two carriers holding contract carrier permits were essentially that of one person and they were acting as common carriers as contemplated by Section 162(4) of the Motor Carrier Act[2] because the essential nature of their business was soliciting or accepting property for transportation for compensation as a business and as such together they furnished such transportation to more than five separate shippers. To do so without obtaining a common carrier’s certificate as required by Section 164, the Commission decidéd, was a violation of the Act.
Accordingly, the Commission ruled that the three Robertson corporations must furnish an acceptable plan within forty-five days, which, when implemented, would result in compliance with its order, or submit an- application within that time to dispose of those certificates or permits which would prevent them from complying with the Act.
When the Commission denied a rehearing, the three Robertson corporations appealed to the Nineteenth Judicial District Court where the order of the Commission was affirmed on the record made before the Commission. This appeal by the three Robertson corporations was then perfected. We affirm.
The rule of law relied upon by the Commission and the District Court and recognized in American Courier Corporation v. Louisiana Public Service Commission, supra, holds that the identity of two corporations as separate entities wilLbe disregarded under Louisiana law by “piercing the corporate veil” when the theory of the separate entity leads to an absurdity, or when the persons involved in a corporation seek to use this legal fiction to immunize themselves from the consequences of their illegal actions.
A review of the evidence adduced before the Commission supports its finding. The vice president of all three corporations was called as a witness by Groendyke, the complainant. He testified that he was a member of the executive committee of all three Robertson corporations. His salary is prorated, among the three companies because he performs substantially the same duties in each. The same person serves as chairman of the board of all three corporations. All eight vice presidents and the two secretaries of the three corporations were the same persons on January 1, 1975. And the *1265 four members of the three boards of directors are the same.
All of the stock in all of the three corporations is owned by Robertson Distribution Systems, Inc., a publicly owned holding corporation. The chief executive officer and president of the three operating companies is a member of the executive committee of the holding corporation.
The main office of each of the three operating companies is located in the same building at the same address in Houston, Texas. All mail dispatched to the three corporations is received in the same office. All managerial personnel except terminal-directors at the Louisiana terminals and those charged with travel safety are headquartered in the Houston office. Accounting, billing and payroll functions for all three operating companies are performed in the Houston office.
One salesman in Louisiana is a permanent employee devoting a portion of his time to each company. Expenses and salaries of employees at the Louisiana terminals are charged to the operating companies on the basis of the freight handled and the revenue reported monthly by each operating company. Salaried personnel for all companies are issued checks by Robertson Tank Lines, Inc., the corporation holding the common carrier certificate. Some employees, including maintenance, repair and dispatching service personnel, work interchangeably for the three carriers. Gasoline and fuel facilities at the operating terminals are used in common by the operating companies as the occasion warrants. The record also supports the allegation that vehicles owned by one of the carriers at times are used by the other under lease or other arrangement.
Significantly, the record shows that the common carrier serves the same shippers served by the contract carriers and that common carriers are bound by published rates whereas contract carriers are free to negotiate rates, the sole requirement being that the rates charged by contract carriers be filed with the Commission for review.
Thus the record abundantly supports by uncontradicted evidence the Commission ruling that the three Robertson corporations were in truth and in fact operating as one person holding both common carrier certificates and contract carrier permits contrary to Section 165. For the word “person” as used in the Motor Carrier Act includes a body of persons whether incorporated or not; it applies likewise to corporations acting together in a common undertaking. Furthermore, by piercing the corporate veil of the three corporations it becomes obvious that the two contract carriers operating under four and five contracts, respectively, were together operating as one person furnishing transportation to more than five separate shippers. By doing so they are held to be a common carrier operating as such without the required certificate. La.Rev.Stat. 45:162(4), 164.
It has not been shown that these two contract carriers have discharged the burden by a clear preponderance and to the satisfaction of the Commission that the character of their operations is not that of a common carrier.
The contract carriers introduced no testimony to. exonerate themselves from the pri-ma facie presumption in law that they were operating as a common carrier by acting as one person serving more than five shippers. La.Rev.Stat. 45:162(4). The only evidence touching upon the subject was the testimony of a vice president of each of the three corporations. When he was cross-examined by the Groendyke’s attorney he simply stated, without supporting documents or vouchers, that as a matter of practice neither contract carrier would act as a common carrier for any of their nine contract companies. In light of the abundant evidence of the common operations of these carriers, that testimony- is insufficient to overturn the Commission finding to the contrary.
As the facts of this case disclose, the three operating companies are authorized to transport the same commodities in the same geographical area. These circumstances *1266 permit discrimination. While the common carrier must adhere to the commodities and rates approved by the Commission and serve the public generally in a nondiscriminatory manner, if the common carrier is in fact the same “person” as contract carriers organized as fictitious entities, it is able through these contract carriers to favor shippers with special rates and services and thereby undercut other common carriers who may not legitimately operate as contract carriers, thus violating its own certificate. This is the effect of the Commission’s finding.
The Commission is charged with the responsibility of regulating all motor carriers. This power and authority is broad and comprehensive, La.ReviStat. 45:163, and is declared to be a matter affected with a public interest. La.Rev.Stat. 45:161. Because the Commission operates in a technical field its orders are accorded great weight and are not disturbed by courts unless they are found to be unreasonable, arbitrary or capricious, Transway, Inc. v. Louisiana Public Service Commission, 253 La. 933, 221 So.2d 53 (1969). On this record the Commission’s order is neither arbitrary, unreasonable or capricious. The record supports its ruling as well as the judgment of the District Court and this Court. Rubion Transfer Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880 (1960).
For the reasons assigned, the ruling and order of the Commission and the judgment of the District Court are affirmed.

. La.Rev.Stat. 45:164:
“No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.
“No motor carrier shall operate as a contract carrier without having had a public hearing and obtained from the commission a permit to do so, which permit shall not be issued unless in the public interest and-until the applicant shall have complied with the requirements of R.S. 45:161 through R.S. 45:172.”

. La.Rev.Stat. 45:162(4):
“(4) ‘Common carrier by motor .vehicle’ means any person, the essential nature of whose business comprises engaging in, soliciting or accepting persons or property for transportation for hire, charge, or compensation as an employment or holding himself out as so available to the public generally and indiscrimi-nhtely for such business, whether or not the business is conducted over a regular route, between fixed termini, within a defined area, or upon a regular or irregular schedule. There shall be two main classes of common carriers, ‘common carriers of commodities over regular routes’, and ‘common carriers of special commodities over irregular routes’. ‘Common carriers of special commodities over irregular routes’ means any person, as a common carrier, transporting commodities which require special equipment, service or handling over irregular routes and not between fixed termini. All certificates of public convenience and necessity now issued and validly outstanding shall continue in full force and effect until the further orders of the Commission. Any person who, with or without specific contracts, furnishes such transportation to more than five separate shippers of property or more than five passengers shall be, prima facie, held to be a common carrier and the burden shall rest upon him to show by a clear preponderance and to the satisfaction of the Commission that the character of his operations is not that of a common carrier. This paragraph shall not apply to the business of any person conducted mainly within the corporate limits of one incorporated municipality but within a radius of seven miles of the limits of the incorporated municipality but this exemption shall not apply to motor carriers of passengers operating beyond the limits of the parish of their domicile unless the major portion of such carrier’s operations are conducted within the corporate limits of one municipality.”